**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| JOHN HALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) |
| INTERNATIONAL ASSOCIATION OF BRIDGE, | )    Case No.: |
| STRUCTURAL, ORNAMENTAL AND | ) |
| REINFORCING IRON WORKERS; | ) |
| ARCHITECTURAL AND ORNAMENTAL | ) |
| IRON WORKERS UNION LOCAL NO. 63, | ) |
| and PAUL WENDE | ) |
| Defendants. | ) |

## <u>COMPLAINT</u>

NOW COMES the plaintiff, JOHN HALL, by and through his attorneys, and for cause

of action pursuant to the Labor Management Reporting and Disclosure Act, states as follows:

## <u>PARTIES</u>

1.   The Plaintiff, JOHN HALL (hereinafter "HALL"), was a duly elected business agent of

Defendant, ARCHITECTURAL AND ORNAMENTAL IRON WORKERS UNION LOCAL

NO. 63 (hereinafter "IW LOCAL 63") at all times relevant to this Complaint.  HALL resides in

Cook County, Illinois.

2.   Defendant,  INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL,

ORNAMENTAL AND REINFORCING IRON WORKERS  (hereinafter "BSOIW") is a labor

union representing workers in construction related services in the United States and Canada.

BSOIW is headquartered in Washington, DC, and conducts business throughout the United

1

States, including in the counties within the Northern District of Illinois.

3.   Defendant, IW LOCAL 63, is a local union, with a membership of approximately 1,500, affiliated with BSOIW. The  local has jurisdiction to represent public and private employees, in Cook, Lake, McHenry, and Eastern DuPage County.  IW LOCAL 63's main offices are located in Broadview, Illinois.

4.   Defendant, Paul Wende, was appointed Business Manager of IW LOCAL 63, by Eric Dean, president of BSOIW, in September of 2018, in which position he is obligated to act in accordance with the Constitution and By- laws of both IW LOCAL 63 and BSOIW.

## JURISDICTION AND VENUE

5.       HALL's cause of action against BSOIW and IW LOCAL 63, arises under the provisions of the Labor Management Reporting and Disclosure Act, 29 U.S.C. §411, et seq. which creates a private cause of action to union members whose rights, as defined by the statute, are violated.

6.       Jurisdiction is conveyed upon this Court by virtue of 28 U.S.C. § 1331 as this claim arises under the laws of the United States of America.

7.       Venue is appropriate in the Northern District of Illinois by virtue of 28 U.S.C. § 1391 as the substantial events or omissions giving rise to this claim are located in the counties served by the Northern District of Illinois, including Cook County.

## COUNT I

## LABOR MANAGEMENT AND REPORTING AND DISCLOSURE ACT

### Violation of Section 101(a)(2)

2

8.      HALL was, at all times referenced in this Complaint, a member in good standing of IW LOCAL 63, with all the rights and responsibilities associated with membership.

9.      In June 2013, through an open democratic process, the members of ARCHITECTURAL AND ORNAMENTAL IRON WORKERS UNION LOCAL NO. 63, elected HALL to the office of Business Agent for IW LOCAL 63, for a three-year term.  HALL was then re-elected three years after that in 2016, and again three years after that in 2019.

10.     Commencing June 2013 HALL fulfilled all duties of the office of elected Business Agent of IW LOCAL 63 and worked to promote the interests of and protect the rights of its members.

11.     In addition to his elected position as Business Agent of IW LOCAL 63, HALL received several appointments from the Local, including: 1) As Trustee for the Local's Defined Contribution Pension Trust Fund; 2) As a serving member of the Local's fence contract negotiation committee; 3) As a serving member of the Building Contract Negotiation Committee; 4) As the Local's representative to the Chicago Park District;  5) The Local's Representative to the Metropolitan Water Reclamation District; and  6) The Local's Representative to the Chicago Federation of Labor; 7)  The Fence Apprenticeship Trust Fund.

12. As a Business Agent, HALL was a vocal critic of policies and positions taken by the IW LOCAL 63 leadership, which he felt were contrary to the interests of the Local's membership

(hereafter "the membership").

13.     In November 2015 HALL confronts the law firm hired by IW LOCAL 63 to handle its legal matters generally, including the representation of its benefit funds.  HALL questions the Local's attorneys in writing about conflicts of interest that existed, due to their regular representation of individual members of the Local in workers compensation and personal injury claims, that pitted them against the subrogation interests of the Local's health and welfare benefit fund, whom the same attorneys also represented.

14.     In November 2015, in the absence of any provocation, HALL is physically attacked at an IW Local 63 social event, by a fellow member of IW Local 63, for no identifiable reason.

15.     Counterintuitively, Hall was reprimanded by the local for being in a physical altercation, despite being the victim of the attack, but the member who attacked him was not disciplined in any way.

16.     Nearly three years after this attack, the same individual, still a member of IW Local 63, would seek HALL out again, and attack HALL a second time, without provocation or warning, and again for no seemingly no identifiable reason.

17.     In January 2016, HALL began to challenge the way the Local handled its Defined Contribution Pension Trust Fund ("pension fund").  HALL believed the Local may have been overpaying the third-party administrator hired by the Local to manage the pension fund, Benefits

Management Group Inc. ("BMGI"), and as Trustee, HALL refused to sign a new contract with

BMGI until discussions were had on issuing a Request For Proposals ("RFP") and soliciting

competitive bids from other Third Party Administrators.


18.   HALL's position on the RFP was in the best interests of the membership.  The Department

of Labor recommends all unions execute a request for proposal on their service providers every

3-5 years to assure pricing remains competitive, which Hall conveyed to the Local leadership at

the time.  BMGI had been serving as the fund administrator since 2007, but had never been

competitively bid against and there had never been an RFP.  However HALL's proposition was

still vehemently opposed by the IW LOCAL 63 President, and Business Manager, in spite of

this.


19.   At a quarterly meeting of the pension fund's board of trustees in January 2016, HALL

brought a motion before the board calling for issuance of an RFP that would solicit competitive

bids from other qualified Third Party Administrators, who might potentially serve the pension

fund at lower costs than its current administrator, BMGI.  The Local President, Paul Thompson,

and Business Manager Larry McNiff spoke out strongly against the idea, and discouraged the

other board members, some of whom were subordinate employees of the Local, from seconding

the motion, thereby enabling it come to the floor for a vote.  Eventually, a board member, who

was neither a member or employee of the Local, seconded HALL's motion, forcing the issue to a

vote. HALL insisted it be a roll-call vote, which requires the name of each trustee to be recorded,

along with his or her vote, as opposed to a voice vote, which does not. In spite of the board's

initial reluctance to bring the motion for RFP to the floor, when the roll-call vote was conducted

the motion passed. Paul Thompson would then remove HALL from the Pension Fund's board of Trustees shortly thereafter, and it is unknown whether the RFP was ever conducted, as no information from it was ever shared with HALL, or the Pension Fund board while Hall was still one of its trustees.

20.     In April 2016, even though he was an incumbent, HALL still needed to be nominated as a candidate in order to appear on the ballot for reelection as one of IW LOCAL 63's five business agents. IW LOCAL 63's President, Paul Thompson, attempted to prevent HALL's candidacy and reelection, by conducting the candidate nominations process in HALL's absence, thus pre-empting HALL from getting nominated and appearing on the ballot.

21.  HALL was tipped off that candidate nominations had been abruptly commenced in the union hall without him, shortly after he had exited the building. Hall managed to hurry back just as nominations were ending, and was duly nominated before it was too late. Had the process concluded before he got there, HALL could not have been nominated as an official candidate, and his name would not have been permitted to appear on the election ballot for business agent, effectively removing him from contention and reelection.

22.     In 2016 IW LOCAL 63 president, Paul Thompson removes HALL from his post as Trustee for the Defined Contribution Pension Trust Fund.

23.      In 2016 IW LOCAL 63 president, Paul Thompson removes HALL from his post as Trustee for the Fence Apprenticeship Committee Trust Fund.

24.     Upon information and belief, HALL was relieved of his duties as a trustee for both the Defined Contribution Pension, and Fence Apprenticeship Trust Funds, as aforestated, for scrutinizing, raising questions, and speaking out, about the Local's benefit plans, and the excessive fees, management, and performance of its plans and trust funds; For scrutinizing the Local's chosen Third Party Administrator for the funds, and for demanding RFP's and more transparent methods of selecting administrators and managers for IW LOCAL 63's pension and other funds, as well as voicing positions adverse to or unfavored by the IW LOCAL 63 leadership, including its president, Paul Thompson, and business manager, Larry McNiff.

25.     In 2016 IW LOCAL 63 business manager, Larry McNiff, removes HALL from his appointment as IW LOCAL 63's union representative to the Chicago Park District.

26.     In 2016 IW LOCAL 63 business manager, Larry McNiff, removes HALL from his appointment as IW LOCAL 63's union representative to the Metropolitan Water Reclamation District.

27.     In 2016 IW LOCAL 63 business manager, Larry McNiff, removes HALL from his appointment as IW LOCAL 63's union representative to the Chicago Federation of Labor

28.     IW LOCAL 63 President, Paul Thompson, bans the Local's business agents, including HALL, from attending IW LOCAL 63 executive board meetings.   In the 20 plus years that HALL had been a member of IW LOCAL 63, its business agents, including HALL, had always been permitted, and routinely did, attend IW LOCAL 63 Executive Board meetings.

29.     In June 2016 the IW LOCAL 63 membership elects HALL to his second term as business agent, and HALL continues his policy of scrutinizing the administration and management of the Local's pension and benefit plans.

30.     In June 2016 IW LOCAL 63 Business Manager Larry McNiff, removed HALL from his assigned area of coverage.  This was the geographical portion of IW LOCAL 63's jurisdiction that HALL, as one of its 5 Business Agents, was responsible for managing.  Contrary to established custom and practice, McNiff then reassigned HALL, who lives in Oak Lawn Illinois, to cover the territory furthest from his home, in Lake and McHenry Counties.

31.     In June 2017 HALL's appointment to IW Local 63's Fence Contract negotiation Committee is not renewed by Local President Paul Thompson.

32.     In November 2017 HALL attempts to file charges with the National Labor Relations Board ("NLRB"), against two construction contractor companies that use IW Local 63 labor, for unlawfully interfering with IW Local 63 affairs.  Upper management personnel from the construction companies were improperly serving as union officials for IW Local 63.  HALL observed one of the contractors to be employing IW Local 63's Vice President as its Midwest Director of Operations, and the other contractor was employing the Local's Trustee as it's superintendent. HALL noted this violated NLRB regulations, which do not permit union officials to work for contractors in any type of supervisory management role, which would include both a Director of Operations and a Superintendent.

33.     Upon HALL's complaining to the NLRB about these two contractors and their agents unlawfully serving as union officials for IW Local 63 , he received a text message from the BSOIW President, Eric Dean, requesting that HALL meet with him, IW Local 63 President Paul Thomspon, and Business Manager Larry McNiff.

34.     In December 2017 the meeting between the four takes place at the IW Local 63 Union Hall, where hall HALL is directed to abandon the NLRB charges.   HALL does not agree, and the meeting becomes heated.  HALL attempts to leave the meeting and BSOIW President Eric Dean physically blocks HALL, placing his chair between HALL and the exit.  Eric Dean threatens to remove HALL from his role as Business Agent for IW Local 63 if he pursues further action with the NLRB.

35.     HALL does not proceed with the NLRB charges for fear of retaliation, and losing his job.

36.     In June 2018 HALL's appointment to IW Local 63's Building Contract negotiation Committee is not renewed by Local President Paul Thompson, making HALL the only business agent for IW Local 63 not assigned to any committees.

37.     In June 2019 the IW LOCAL 63 membership elects HALL to his third term as business agent.

38.     In June 2019, Paul Wende, Larry McNiff's successor as Business Manager for IW Local 63, reinstates HALL to his original area of coverage, and his appointment as IW Local 63's

representative to the Chicago, Park District.

39.     In July 2019 at an IW Local 63 union hall meeting, Business Manager Paul Wende

announces to the members that IW Local 63 will be purchasing the building and real property

located next door to the union hall (hereafter "real property) for $600,000.  Paul Wende

represents to the members at the meeting that the real property's fair market value is actually

$900,000.

40.     In August 2019, after some investigation, HALL discovers that Chris Kryzko, the chief

financial officer of Benefit Management Group, Inc., which is IW Local 63's Third Party

Administrator, holds an ownership interest in the real property Paul Wende wants to purchase.

Additionally, HALL receives information that the Real Property appraised for substantially less

than the $600,000 contract purchase price proposed by Business Manager Paul Wende (hereafter

"Wende").  HALL then advises Wende that his plan for purchasing the real property does not

appear to be an arm's length transaction, that it would be a bad deal for IW Local 63, and is not

acceptable.

41.     In spite of HALL's objections, IW Local 63 Business Manager, Paul Wende, reaffirms

that IW Local 63 will purchase the real property for $600,000 as proposed.

42.     HALL reports the situation surrounding the real property to the Department of Labor.

The Department of Labor informed HALL that they contacted the attorneys for IW Local 63

about the matter, whom indicated they would be advising IW Local 63 against purchasing the

real property, because the appraised value was too low.

43.     Shorlty thereafter Wende confronted HALL, and conveyed his disappointment over HALL's interference in the real property acquisition, as it had become increasingly untenable as a result.  Wende averred that while the real property purchase was tabled for now, he believed that IW Local 63 would still acquire the real property at some point in the foreseeable future, and if needed would ultimately obtain an appraisal to support the desired contract price.  HALL expressed that such an approach would neglect their fiduciary duty to IW Local 63.

44.     On October 17, 2019, the same IW Local 63 member who attacked HALL in November of 2015 (as described in paragraph #'s 14-16), suddenly appeared at a lunch meeting HALL was conducting with an IW Local 63 foreman and two iron workers from a nearby jobsite, and attacked HALL a second time, knocking him off his chair and injuring him.  HALL had no knowledge his assailant had entered the premises, and no opportunity to speak to, address, or even look at his assailant prior to being attacked, making provocation impossible. Moreover, HALL had almost no contact with his assailant, and did nothing to provoke him during the nearly four-year interim period between the first and second attack.  Upon information and belief, HALL's enemies within the IW LOCAL 63's leadership orchestrated the attack.

44.     Again, IW LOCAL 63 failed to take action to discipline HALL's assailant, and therefore HALL independently initiated both criminal charges for battery and union charges against the other member for violating the IW LOCAL 63 Bylaws and Constitution by attacking HALL.

45.     On the Union charges, HALL's assailant was found guilty by a jury of fellow union members.  Despite this being his second such attack upon HALL, and having inflicted significant bodily injury, the IW LOCAL 63 imposed only a minimum fine.  Upon information and belief, even this fine was never enforced.

46.     A civil action for battery was also brought against HALL's assailant in State Court, and a civil judgment for HALL's injuries, including an award for punitive damages, was entered against the other IW LOCAL 63 union member by the Circuit Court of Cook County.

47.     In January 2020, business manager Paul Wende re-revokes HALL's appointment as IW LOCAL 63's union representative to the Chicago Park District, alleging insubordination as a false pretext for HALL's removal.

48.     In January 2020, union charges are initiated against HALL for his involvement in the incident back in 2015, when he was attacked the first time, falsely accusing that HALL was responsible for the altercation over four years earlier, and thus violated the Local 63 Bylaws and Constitution.

49.     On or about February 12, 2020, HALL submits a proposed resolution for amendment of the IW Local 63 Constitution and By-Laws (hereafter "constitution & by-laws") that would provide for the democratic election of the trustees that that sit on boards for the Local's trust funds, such as health & welfare trusts, trainee programs, and pension trusts, and abolish the existing practice whereby all trustees get appointed by the Local's President.

50.     In response to HALL's proposed resolution, Wende and/or Thompson circumvent(s) the established constitutional protocol for the presentment, consideration, and passage of amendments to the constitution & by-laws, by soliciting the untimely intervention of the BSOIW General Executive Board, or certain of its members, to prevent HALL's resolution from coming to the floor to be voted on, and instead declare the resolution "out of order" before its second reading. The procedure sanctioned by the Local's constitution & by-laws for passage of amendments, required that the proposal be read at at least three consecutive meetings, then voted on. If supported by a majority vote, then it was to be sent to BSOIW for approval. The constitution and bylaws were disregarded in this case, instead the BSOIW General Secretary was summoned to declare the measure out of order before it could be voted on.

51.     In March 2020 HALL is put on trial for the union charges stemming from the 2015 incident nearly 5 years earlier, making him the only officer ever placed on trial during the 21 years HALL had been a member of IW Local 63. HALL is found not-guilty by a jury of his fellow union members.

52.     The same day the HALL was found not guilty from the 2015 incident, new charges are initiated against HALL for allegedly threatening another member of IW Local 63 with physical violence. The charges were meritless, and did not go to trial.

53.     On July 10, 2020, during a debate at the regular monthly union hall, HALL is surrounded by IW Local 63's officers and physically attacked by multiple people, including one of the Local's other business agents, and an organizer, is thrown to the ground, struck and punched (hereafter "July 2020 union hall brawl").

54.     Criminal complaints are filed against HALL for battery and criminal damage to property by the union officials involved in the July 2020 union hall brawl.  All charges are dismissed without adjudication on the merits.

55.     Upon information and belief, the July 2020 union hall brawl was premeditated by HALL's enemies within the IW Local 63 leadership, in order to subject HALL to discipline that could be used to disqualify HALL from his elected office of business agent for IW Local 63.

56.     On July 12, 2020, Wende permanently bans HALL from entering IW Local 63's union hall, and from being upon IW Local 63 property.  Wende also suspends HALL from preforming the functions of his office of business agent.  Wende cites HALL's acts of violence against members of the local, being disruptive at union hall meetings, and the July 2020 union hall brawl as his reasons for imposing these sanctions.  However HALL is never served with written specific charges; never given any opportunity to respond to Wende's accusations, or time to prepare a defense, or ; afforded a full and fair hearing, or any kind of hearing, before or after Wende imposes this punitive sanction against HALL, suspending him from his job, and revoking his rights to come to the union hall.

57.     No one else that was involved in the July 2020 union hall brawl, other than HALL, is disciplined or reprimanded in anyway.

58.     On or about July 20, 2020, without a hearing, without written charges, and without

14

notice to HALL, Wende publishes a letter to the entire IW Local 63 membership containing false statements about HALL, defaming his character, blaming him for the July 2020 union hall brawl, and announcing that HALL is no longer allowed to be at the union hall or on IW Local 63's property. Wende also seizes HALL's work vehicle, laptop computer, cell phone, and credit card.

59. On or about November 6, 2020, without any hearing, formal charges, or advance notice to HALL, Wende terminates HALL from his elected office and job as Business Agent for IW Local 63, and gives it to one of the true instigators of the July 2020 union hall brawl, Fletcher Holmes. Wende publishes another letter to the entire membership, declaring that HALL is no longer a business agent, that his office has been given to Holmes, and making false defamatory statements about HALL.

60. The acts cited herein committed against HALL by IW LOCAL 63, and BSOIW, through its agents, employees and apparent agents, including Paul Wende, Larry McNiff, Paul Thompson, Eric Dean, and others, were done in response to, and in retaliation for, conduct by HALL that was an exercise of his right to free speech, protected by the LMRDA, including, but not limited to, the following:

    i. HALL'S Questioning the Local's attorneys about improper conflicts of interest that arise in their regular representation of members of the Local, in matters adverse to the interests of the IW Local 63;

ii. HALL Objecting to contracts with the Local's established service providers, insisting that competitive bids be obtained and considered from prospective new service providers, such as fund managers and third-party administrators, and that RFP's be issued regularly as recommended by the Department of Labor;

iii. Scrutinizing, raising questions, and speaking out about the Local's benefit plans.

iv. Pursuing his proposal that trustees to the Local's trust funds, be democratically elected by the members, rather than appointed by Paul Thompson;

v. Objecting and initiating charges with the NLRB in opposition to the practice of people serving as officials for the union, and at the same time working as a Director of Operations and a Superintendent for Construction Contracting Companies that hire the Local's laborers, in violation of NLRB's conflict rules;

vi. Opposing Wende's decision to make IW Local 63 purchase real property in which a union insider held an ownership interest, at an inflated price, and reporting the matter to the Department of Labor, and effectively blocking the transaction from going forward;

61. The Labor Management and Disclosure Act (LMRDA) requires, in relevant part:

> "*Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; . . .*" 29 U.S.C. §411(a)(2).

.

62.     The retaliatory actions of IW Local 63 & BSOIW as alleged above have trampled HALL's rights and deprived him of his job as Business Agent of IW Local 63; and his right to go to the IW Local 63 union hall, to meet and assemble freely with other members, to recertify his welding training and certificate, and to secure employment as an iron worker through the union hall.

63.   HALL has exercised all internal remedies available to him to resolve his claims asserted herein, including but not limited to:

    a.    Protesting the actions and procedures of Wende in banning, suspending, and terminating him without the due process measures guaranteed by the unions constitutions and bylaws, and by the LMRDA §101(a)(5).

    b.    Demanding reinstatement of his office, job, and membership or a hearing upon formal written charges.

    c.    Appealing to the BSOIW, and its International executive board;

64.     As a direct result of the unlawful actions of the Defendants, HALL has been severely and permanently damaged, including sustaining loss of pay and benefits, loss of reputation and standing in the labor movement, permanently impairing his future earnings, defamation of character and ability, loss of his membership right to visit the union hall and be upon union property, loss of his ability to fairly participate in future elections, to recertify his welding training and certificate at the union hall, and to secure employment as an iron worker at the union hall.

**WHEREFORE**, Plaintiff, John Hall, prays for Judgment in his favor and against Defendants,

BSOIW, IW Local 63, Paul Thompson, individually and as President of BSOIW, Paul Wende,

individually and as Business Manager of IW Local 63, as follows:

      a.     For an award of compensatory damages in an amount to be determined at the time of trial;

      b.     For an award of punitive damages in an amount to be determined at the time of trial;

      c.     For pre-judgment interest in an amount to be determined at the time of trial;

      d.     For an order enjoining BSOIW and IW Local 63 to fully reinstate HALL to his position as a duly elected business agent of IW Local 63, reinstating his right to go to the Union Hall for IW Local 63, and to be upon the property, and guaranteeing him the full rights of membership to participate in all democratic procedures of the union;

      e.     Attorneys fees and costs; and

      f.     For such other relief as is just and equitable.

## COUNT II
## LABOR MANAGEMENT AND REPORTING AND DISCLOSURE ACT
## Violation of Section 101(a)(5)

65.     Plaintiff adopts and realleges Paragraphs 1 through 63, inclusive, the same as if set forth in full herein.

66.     HALL never received a hearing, nor written charges of wrongdoing before Wende banned HALL from the Union Hall, suspended him indefinitely from his job, and finally terminated HALL from his office of Business Agent.

67.     The Labor Management and Disclosure Act (LMRDA) requires, in relevant

part:

> "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. §411(a)(5) (1988).

68.     The ban Wende imposed upon HALL, barring him from coming to the union hall, or onto IW Local 63 property, effectively stripped him of membership rights, including the right to participate in the democratic processes of the union, to meet and assemble freely with other members, to recertify his welding training and certificate, and compromised his ability to secure employment as an iron worker in violation of 29 U.S.C. §411(a)(5).

69.     As a direct result of the unlawful actions of the Defendants, HALL has been severely and permanently damaged, including sustaining loss of pay and benefits, loss of reputation and standing in the labor movement, permanently impairing his future earnings, defamation of character and ability, loss of his membership right to visit the union hall and be upon union property, loss of his ability to fairly participate in future elections, to recertify his welding training and certificate at the union hall, and to secure employment as an iron worker at the union hall.

70.     HALL has exercised all internal remedies available to him to resolve his claims asserted herein, including but not limited to:

   a.   Protesting the actions and procedures of Wende in banning, suspending, and terminating him without the due process measures guaranteed by the unions constitutions and bylaws, and by the LMRDA §101(a)(5).

   b.   Demanding reinstatement of his office, job, and membership or a hearing

upon formal written charges.

c.      Appealing to the BSOIW, and its International executive board;

**WHEREFORE**, Plaintiff, John Hall, prays for Judgment in his favor and against Defendants, BSOIW, IW Local 63, Paul Thompson, individually and as President of BSOIW, Paul Wende, individually and as Business Manager of IW Local 63, as follows:

a.   For an award of compensatory damages in an amount to be determined at the time of trial;

b.   For an award of punitive damages in an amount to be determined at the time of trial;

c.   For pre-judgment interest in an amount to be determined at the time of trial;

d.   For an order enjoining BSOIW and IW Local 63 to fully reinstate HALL to his position as a duly elected business agent of IW Local 63, reinstating his right to go to the Union Hall for IW Local 63, and to be upon the property, and guaranteeing him the full rights of membership to participate in all democratic procedures of the union;

e.   Attorneys fees and costs; and

f.   For such other relief as is just and equitable.

## <u>COUNT III</u>
### <u>HALL WAS TERMINATED AS AN EMPLOYEE OF IW LOCAL 63 CONTRARY TO CONTRACT LAW AS ESTABLISHED BY THE STATE OF ILLINOIS</u>

71.     Plaintiff HALL alleges and incorporates by reference herein Paragraphs 1 through 69 of this Complaint.

72.     Jurisdiction over this Count III is predicated on 28 U.S.C. 1367 authorizing the Court to execise pendant jurisdiction of any related state claims which arise out of the same case or controversy which the Court has original jurisdiction.

73. Defendants IW Local 63, and BSOIW, breached the promises, guarantees, and due process rights contained in the IW Local 63, and the International Union's Constitutions and Bylaws, when HALL was banned, suspended, and terminated, including, but not limited to, the following promises, guarantees, and rights described in Article XXVI of the BSOIW constitution:

    i.   That officers, including Business Agents, such as HALL, shall be elected for a term of at least three (3) years and shall serve until their successors are elected, duly qualified and installed.

    ii.   That charges of misconduct against an officer or member in violation of the International or Local Constitutions or bylaws must be preferred in writing, and set forth in detail.

    iii.   That the accused officer or member must be furnished with an exact copy of the charges, and notified and served in writing when and where to appear for trial, a reasonable time prior to trial in order to allow the accused sufficient time to prepare a defense (14c).

    iv.   That the signatures of 15 members to a petition be required in order to maintain misconduct charges against an officer such as HALL.

v. That all officers, such as HALL, receive a trial by a jury of 12 other members in good standing.

73. As a direct result of the Defendants breach of contract, HALL has been severely and permanently damaged, including sustaining loss of pay and benefits, loss of reputation and standing in the labor movement, permanently impairing his future earnings, defamation of character and ability, loss of his membership right to visit the union hall and be upon union property, loss of his ability to fairly participate in future elections, to recertify his welding training and certificate at the union hall, and to secure employment as an iron worker at the union hall.

**WHEREFORE**, Plaintiff, John Hall, prays for Judgment in his favor and against Defendants, BSOIW, IW Local 63, Paul Thompson, individually and as President of BSOIW, Paul Wende, individually and as Business Manager of IW Local 63, as follows:

a. For an award of compensatory damages in an amount to be determined at the time of trial;

b. For an award of punitive damages in an amount to be determined at the time of trial;

c. For pre-judgment interest in an amount to be determined at the time of trial;

d. For an order enjoining BSOIW and IW Local 63 to fully reinstate HALL to his position as a duly elected business agent of IW Local 63, reinstating his right to go to the Union Hall for IW Local 63, and to be upon the property, and guaranteeing him the full rights of membership to participate in all democratic procedures of the union;

e. Attorneys fees and costs; and

f. For such other relief as is just and equitable.

PLAINTIFF DEMAND TRIAL BY JURY

Dated: July 11, 2022                                    Respectfully,

                                                       s/ John Q. Fitzpatrick/
                                                       (ARDC No. 6272225)
                                                       Attorney for Plaintiff
                                                       Fitzpatrick Law Firm
                                                       11011 S. Kedzie Ave
                                                       Chicago, IL 60655
                                                       773/238-2500
                                                       wfflaw@yahoo.com
                                                       john@fitzpatricklawfirm.com