## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

John Hall,                                   )
                                             )
          Plaintiff,                     )
                                             )       Case No. 22-cv-3585
          v.                             )
                                             )       Judge Joan B. Gottschall
International Association of Bridge,          )
Structural, Ornamental and Reinforcing       )
Iron Workers, et al.,                        )
                                             )
          Defendants.                    )

## MEMORANDUM OPINION AND ORDER

After he was banned from union property and removed from union office, plaintiff John Hall ("Hall") filed a three-count complaint alleging claims under Title I of the Labor-Management Reporting and Disclosure Act of 1959, as amended ("LMRDA"), 29 U.S.C. § 401 et seq., and a related claim for breach of contract. The complaint names three defendants—the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers (the "International" or "BSOIW"); Architectural and Ornamental Iron Workers Union Local No. 63 ("IW Local 63"), an affiliate of the International with jurisdiction to represent union members in Cook County, Illinois, and specified surrounding areas; and Paul Wende ("Wende"), an IW Local 63 business manager. *See* Compl. ¶¶ 2–4, ECF No. 1. The court has three motions before it. The International moves under 28 U.S.C. § 1404 to transfer this case to the United States District Court for the District of Columbia based on a venue and forum-selection clause in its constitution. Separately, defendants move to dismiss the complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). For the following reasons, the court denies the motion to transfer and stays this case to allow Hall to pursue his internal union remedies in accordance with the International's constitution. *See* 29 U.S.C. § 411(a)(4).

## I. Background

The following facts come from Hall's complaint. Defendants dispute many of Hall's factual allegations and the inferences he draws from them. *See, e.g.*, IW Local 63 and Wende's

Mem. Supp. Mot. to Dismiss ("Local 63 Defs.' Mem. Supp. Mot. to Dismiss") 1–2, ECF No. 23. When deciding a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim, the court must "construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor." *Taha v. Int'l Broth. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) (citing *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013)). The court recites the facts in keeping with these principles but does not vouch for the facts alleged in the complaint. *See, e.g.*, *Northen v. City of Chicago*, 126 F.3d 1024, 1025 (7th Cir. 1997).

Headquartered in Washington, D.C., the International "conducts business throughout the United States." Compl. ¶ 2. Its president appointed defendant Wende as business manager of IW Local 63 in 2018. Compl. ¶ 4. IW Local 63 must follow its own constitution and bylaws as well as the constitution and bylaws of the International. *See* Compl. ¶¶ 3–4. The membership of IW Local 63 elected Hall to the office of business agent in June 2013. Compl. ¶ 9. He was reelected to consecutive three-year terms in 2016 and 2019. *Id*. Under IW Local 63's constitution and bylaws, its president appoints all members of the board of trustees of the union's pension and benefit funds. *See* Compl. ¶ 49. Hall was initially appointed to several board and liaison positions, including an appointment as a trustee of IW Local 63's defined contribution pension trust fund. *See* Compl. ¶ 11.

"As a Business Agent, HALL was a vocal critic of policies and positions taken by the IW LOCAL 63 leadership, which he felt were contrary to the interests of the Local's membership." Compl. ¶ 12. The complaint describes in detail a series of rancorous, and sometimes violent, disputes Hall had with IW Local 63 leadership between 2015 and 2020. *See* Compl. ¶¶ 13–59. These events culminated in an incident referred to in the complaint as the "union hall brawl." *See* Compl. ¶¶ 53–55, 57–58. The events described in the complaint include:

- November 2015: Hall sent written questions to the law firm that regularly represented IW Local 63. Hall inquired about possible conflicts of interest created by the firm's representation of union members in workers' compensation and personal injury matters. *See* Compl. ¶ 13.

2

- November 2015:  A fellow union member physically attacked Hall at an IW Local 63 social event "for no identifiable reason."  Compl. ¶ 14.  Despite being the victim, Hall was later reprimanded for this incident, but his attacker was not disciplined.  Compl. ¶ 15.

- January 2016: Hall made a motion at a quarterly board meeting calling for the pension trust fund to use a competitive bidding process to select a vendor to administer the fund rather than, as was proposed, hiring the previously retained administrator without issuing a request for proposals ("RFP").  *See* Compl. ¶¶ 17–19.  The motion passed, and Hall was removed from the pension fund's board shortly thereafter.  *See* Compl. ¶¶ 19, 22.

- April 2016: Paul Thompson ("Thompson"), who was then the president of IW Local 63, attempted to prevent Hall from being reelected as a business manager via a procedural maneuver, specifically by abruptly opening nominations for candidates after Hall had left the union hall.  *See* Compl. ¶¶ 20–21.  Someone "tipped off" Hall, and he returned in time to be nominated and ultimately reelected.  Compl. ¶¶ 21, 29.

- Later in 2016: Hall was removed from several appointed positions "for scrutinizing, raising questions, and speaking out, about the Local's benefit plans, and the excessive fees, management, and performance of its plans and trust funds," as well as for other activities contrary to the interests of union leadership.  *See* Compl. ¶ 24; *see also* Compl. ¶¶ 22–23, 25–27.  For the first time in 20 years, the board closed executive board meetings to business managers, including Hall.  Compl. ¶ 28.

- November 2017: Hall attempted to file charges with the National Labor Relations Board ("NLRB") against two construction companies because members of their management teams were allegedly serving as union officials.  *See* Compl. ¶ 32.

- December 2017: Hall attended a meeting in Chicago arranged by the International's president, Eric Dean ("Dean").  At the meeting, "Hall [was] directed to abandon the NLRB charges."  Compl. ¶ 34.  The meeting became heated.  At one point, Dean moved his chair, blocked Hall from leaving, and threatened to remove him as business agent.  *Id.*  Hall did "not proceed with the NLRB charges for fear of retaliation, and losing his job."  Compl. ¶ 35.

- June 2018: Thompson declined to reappoint Hall to a committee when his appointment lapsed.  Compl. ¶ 36.  With the lapse of this and prior appointments, Hall became "the only business agent for IW Local 63 not assigned to any committees."  *Id*.

- June 2019: Defendant Wende, IW Local 63's newly elected business manager, reinstated some of Hall's responsibilities and committee appointments.  *See* Compl. ¶ 38.

3

- August 2019: Hall objected to a decision, announced by Wende, that IW Local 63 would purchase real property located next to the union hall.  *See* Compl. ¶¶ 39–41. Wende had represented to union membership that the fair market value of the property was $900,000, but Hall uncovered evidence that it had been appraised for substantially less than the fair market value and the agreed purchase price.  *See* Compl. ¶¶ 39–40.  The Chief Financial Officer of the company that manages IW Local 63's pension benefit fund owned an interest in the property.  *See* Compl. ¶ 40. After Wende declined to cancel the purchase, Hall contacted the U.S. Department of Labor.  *See* Compl. ¶¶ 41–42.  Hall's complaint resulted in the purchase being "tabled" due to the low appraisal value.  *See* Compl. ¶¶ 42–43.  Wende confronted Hall about his interference in the purchase.  *See* Compl. ¶ 43.

- October 17, 2019: The same IW Local 63 member who assaulted Hall in November 2015 physically attacked Hall again, without provocation, while he was attending a lunch meeting with other union members.  *See* Compl. ¶ 44. [1]  Hall alleges on information and belief that his "enemies within the IW LOCAL 63's leadership orchestrated the attack."  Compl. ¶ 44. Hall initiated union charges against his attacker and also filed a civil lawsuit in Cook County Circuit Court alleging a battery claim. [2]  *See* Compl. ¶¶ 44a-46.  Hall won at the union trial, but his attacker received a "minimum fine," which union leadership did not enforce.  *See* Compl. ¶ 45.

- January 2020: Wende revoked one of Hall's appointments after making a pretextual charge of insubordination.  Compl. ¶ 47.  Hall was also charged in a union proceeding in connection with the November 2015 assault based on a false claim that he was responsible for the altercation.  Compl. ¶ 48.

- February 2020: Hall introduced a resolution to amend IW Local 63's constitution and bylaws to provide for direct election of trustees who sit on the boards of its various trust funds.  *See* Compl. ¶ 49.

  In response to Hall's proposed resolution, Wende and/or Thompson circumvent[ed] the established constitutional protocol for the

---

1   The complaint contains two paragraphs numbered 44 and two paragraphs numbered 73.  *See* Compl. 11, 21–22.  This opinion distinguishes between these paragraphs by citing the second paragraphs as "44a" and "73a," respectively.

2   Hall alleges that the Circuit Court of Cook County, Illinois, entered a judgment on his civil battery claim against this assailant, including an award of punitive damages. Compl. ¶ 46.  Hall does not provide the date of the judgment or the case number.  *See* Compl. ¶ 46.  This court has located the docket of *Hall v. Machek*, 2020L065006 (Cook Cnty. Cir. Ct., Ill., filed Jan. 17, 2020), but the complaint asserts claims for negligence and willful and wanton conduct stemming from an incident that occurred on the date in question, October 17, 2019.  See Compl. 1, 2, *id.* (Jan. 17, 2020).  A default judgment in the amount of $51,796 was entered on October 15, 2020.  However, the defendant subsequently appeared, and the case's present status is unclear from the state court's docket sheet. Most recently, the docket sheet reflects that an unspecified motion was filed on March 4, 2022, but no disposition of that motion is indicated on the docket sheet.

> presentment, consideration, and passage of amendments to the
> constitution & by-laws, by soliciting the untimely intervention of
> the BSOIW General Executive Board, or certain of its members, to
> prevent HALL's resolution from coming to the floor to be voted on,
> and instead declare the resolution "out of order" before its second
> reading.

Compl. ¶ 50.

- March 2020: A jury of union members found Hall not guilty of the charges stemming
  from the November 2015 assault. Compl. ¶ 51. Other charges were filed against Hall
  on the day he was acquitted, but they were dismissed without a hearing. *See* Compl.
  ¶ 52.

- July 10, 2020: The "union hall brawl" occurred. "[D]uring a debate at the regular
  monthly union hall [sic], HALL is surrounded by IW Local 63's officers and
  physically attacked by multiple people, including one of the Local's other business
  agents, and an organizer, is thrown to the ground, struck and punched." Compl. ¶ 53.
  Hall alleges on information and belief that his opponents in IW Local 63 leadership
  orchestrated the union hall brawl to create a pretext to discipline him and disqualify
  him from holding office. Compl. ¶ 55.

On July 12, 2020, Wende permanently banned Hall from union property, citing as reasons

"acts of violence against members of the local, being disruptive at union hall meetings, and the

July 2020 union hall brawl." Compl. ¶ 56. Wende also suspended Hall from carrying out his

duties as business agent. *Id*. IW Local 63 did not discipline anyone else involved in the

July 2020 union hall brawl. Compl. ¶ 57.

On July 20, 2020, Wende sent a letter to IW Local 63 members falsely blaming Hall for

the union hall brawl and otherwise defaming Hall. Compl. ¶ 58; ECF No. 23-3. The letter stated

that Hall was banned from IW Local 63 property, which includes the union hall. Compl. ¶ 58.

Wende also seized Hall's work vehicle, laptop computer, cell phone, and credit card. Compl.

¶ 58.

On November 6, 2020, Wende terminated Hall's role as business manager without filing

formal charges or holding a hearing. Compl. ¶ 59. Wende also sent a second letter to all

members of IW Local 63 stating that Hall had been removed from office and making other "false

defamatory statements" (not further specified in the complaint). *See* Compl. ¶ 59; ECF Nos. 23-

2, 25-3.

The complaint's first two counts arise under the LMRDA. Section 101(a)(1) of the LMRDA states that, subject to certain exceptions, "Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings." 29 U.S.C. § 411(a)(1). In count I, Hall pleads a claim under § 101(a)(2), which provides in part, "Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions." 29 U.S.C. § 411(a)(2). Referring to the events of 2015–20 pleaded in the complaint, Hall alleges that defendants' retaliatory acts

> trampled HALL's rights and deprived him of his job as Business Agent of IW Local 63; and his right to go to the IW Local 63 union hall, to meet and assemble freely with other members, to recertify his welding training and certificate, and to secure employment as an iron worker through the union hall.

Compl. ¶ 62.

In count II, Hall alleges that defendants violated § 101(a)(5) of the LMRDA by suspending him and banning him from the union hall without first serving him with a written charge of wrongdoing and holding a hearing. *See* Compl. ¶¶ 66–70. Section 101(a)(5) states, "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5). Hall pleads that the ban has "effectively stripped him of membership rights, including the right to participate in the democratic processes of the union, to meet and assemble freely with other members, to recertify his welding training and certificate, and compromised his ability to secure employment as an iron worker in violation of 29 U.S.C. § 411(a)(5)." Compl. ¶ 68.

Count III is a breach of contract claim under Illinois law. *See* Compl. 20; 28 U.S.C. § 1367(a) (supplemental jurisdiction). Hall asserts that defendants "breached the promises, guarantees, and due process rights contained in the IW Local 63['s], and The International

Union's Constitutions and Bylaws, when HALL was banned, suspended, and terminated, including, but not limited to, the . . . promises, guarantees, and rights described in Article XXVI of the BSOIW constitution." Compl. ¶ 73.

## II.  Motion to Transfer Venue

The International bases its motion to transfer venue entirely on the following venue and forum-selection clause in its constitution: "Any suit or legal action brought by any member, person, firm, entity claiming any benefit, privilege or right under this Constitution or against The International Association shall be brought in the tribunal of competent jurisdiction located in the city where the Headquarters of this International Association is located." 2016 Const. of the International ("2016 Int'l Const."), art. XIII, § 10(b), Mot. to Transfer Ex. B at 46, ECF No. 24-2. The International maintains that this clause requires this case to be transferred to the United States District Court for the District of Columbia, where its headquarters is located. *See* Mot. to Transfer 4, ECF No. 24; Compl. ¶ 2.

### A.  Governing Law

Title 28, United States Code, § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In analyzing a motion to transfer under § 1404(a), the court must balance "all relevant private and public interest factors." *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 707 (7th Cir. 2020) (emphasis omitted) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)). As private interest factors, "courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (citations omitted). "[T]he 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Id*. at 978 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 626–27 (1964)). Factors to be considered include "docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's

7

relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy." *Id*. (internal citations omitted). Courts balancing the private and public interest factors must give a valid and enforceable forum-selection clause "controlling weight in all but the most exceptional cases." *In re Ryze Claims Sols.*, 968 F.3d at 705 (quoting *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013)).

Ordinarily, the party moving for a change of venue under § 1404(a) "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986) (citations omitted). However, the presence of a valid forum-selection clause "requires district courts to adjust their usual § 1404(a) analysis in three ways." *Atl. Marine*, 571 U.S. at 63. First, where a valid forum-selection clause is present, the burden shifts to the party opposing transfer to establish "that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63. Second,

> a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.

*Id.* at 64. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id*. at 64 (citation omitted).

### B. Analysis

Hall offers several arguments against transfer, including that the forum-selection clause in the International's constitution was not the product of any meaningful bargaining, rendering it unenforceable. *See* Resp. Opp'n Mot. to Transfer 4–12, ECF No. 33. This argument creates tension with the complaint's breach of contract claim, which seeks to enforce Hall's contractual rights under, among other things, the International's constitution and bylaws. *See* Compl. ¶¶ 72–

8

73a.  The court need not reach these arguments, however, because Hall is correct that enforcing the forum-selection clause in the International's constitution would contravene public policy established in the LMRDA.  *See* Resp Opp'n Mot. to Transfer 8–10.

In Title I of the LMRDA, Congress enacted "an exhaustive 'Bill of Rights' [for union members] enforceable in federal court." *Loc. No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 536 (1984) (citing 29 U.S.C. §§ 411–15).  "In particular, Title I is designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." *Id.* at 535–36 (citing *Finnegan v. Leu*, 456 U.S. 431, 435–36 (1982); other citation omitted).  To enforce these rights, Congress included a provision in § 102 of the LMRDA allowing individual union members to sue in federal district court.  *See Crowley*, 467 U.S. at 537–38 (discussing legislative history).

The second sentence of § 102 specifies a special venue for suits arising under Title I of the LMRDA:

> Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate.  Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

29 U.S.C. § 412.

The second sentence makes venue proper (1) where the "violation occurred;" or (2) where the defendant labor organization's "principal office" is located.  *Id.*; *Serpico v. Laborers' Int'l Union of N. Am.*, 1995 WL 479569, at *4 (N.D. Ill. Aug. 4, 1995).  Most, if not all, of the material events, confrontations, and decisions on which Hall's claims are based occurred in this district.  *See* Compl. ¶¶ 13–59.  The International contends in its reply that some of the events also occurred in Washington, D.C., where Hall sent documents to appeal unsuccessfully to the International and where the International decided his appeal.  *See* Reply Supp. Mot. to Transfer 3, ECF No. 38.  Depending on the facts alleged, there is support for the

proposition that, under § 412, venue may lie where the union's challenged decision was made. *See, e.g.*, *Michael v. Thompson*, 2007 WL 4390342, at *2–3 (S.D. Ill. Dec. 14, 2007); *Serpico*, 1995 WL 479569, at *4; *see also Foster v. Int'l Broth. of Boilermakers*, 1987 WL 16236, at *1–2 (N.D. Ill. Aug. 26, 1987). On the other hand, the Second Circuit has held, "Where, as here, a member charges that his union has interfered with his rights under the Act, that interference must be said to have occurred where it actually took effect upon the member, not where the union determined its plan of action." *Giordani v. Upholsterers Int'l Union of N. Am.*, 403 F.2d 85, 88 (2d Cir. 1968).

Determining where the International's appeal decision occurred for § 412 purposes is unnecessary in this case. Regardless of the answer, the complaint, with inferences favorable to Hall, alleges interference by the International occurring in Cook County, Illinois. These allegations include the International's president, Dean, meeting with and threatening Hall in Illinois in December 2017, and the International's executive board sending a representative to an IW Local 63 meeting in Illinois to declare "out of order" Hall's proposed amendment to IW Local 63's bylaws and constitution. *See* Compl. ¶¶ 33–34, 49–50. Based on these alleged acts occurring in this district, the LMRDA's special venue provision in § 412 gives Hall the right to bring an action against the International in the Northern District of Illinois and in Washington, D.C. *See Serpico*, 1995 WL 479569, at *3.

Therefore, as interpreted by the International, the forum-selection clause in Article XIII of its constitution withdraws Hall's statutory right to sue in this federal district court, making the place of its headquarters the exclusive venue for this LMRDA suit. *See* Mot. to Transfer 2–4. So interpreted, the International's constitution runs afoul of the following provisions of the LMRDA bill of rights:

> (a) . . .

>> (4) Protection of the right to sue. No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a

witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: And provided further, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

* * * *

(b) Any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect.

29 U.S.C. § 411(a)(4), 411(b).

Hall argues that § 411(a)(4) renders the forum-selection clause in the International's constitution unenforceable because it limits his statutory venue rights, but he cites no case so holding. *See* Resp. Opp'n Mot. to Transfer 8–10. The International does not address this argument in its reply. *See* ECF No. 38.

Federal courts of appeals have construed § 411(a)(4) broadly: "If a union member's right to sue is to have any meaning, courts must be ever vigilant in protecting that right against indirect and subtle devices as well as against direct and obvious limitations." *Serv. Emps. Int'l Union v. Loc. 1199 N.E.*, 70 F.3d 647, 654 (1st Cir. 1995) (quoting *Phillips v. Int'l Ass'n of Bridge Workers*, 556 F.2d 939, 942 (9th Cir. 1977); other citation omitted). Consistent with this construction, the court in *Serpico* applied § 411(a)(4) to hold unenforceable a forum-selection clause in a union constitution similar to the one at issue here. *See Serpico*, 1995 WL 479569, at *1–3. The constitution in *Serpico* included the following clause: "Venue to litigate any action arising out of contractual rights allegedly premised upon the Union Constitution shall exist only in the Federal District Court for the District of Columbia." *Id*. at *1 (alterations omitted). In holding that this clause was incompatible with the LMRDA, the court reasoned that "a forum-selection clause, by depriving the union member of a preferred and otherwise available forum, may impose costs that deter litigation." *Id*. at *2.

The facts before the court in the case at hand illustrate this point. Hall lives in Oak Lawn, Illinois. Compl. ¶ 30. He has submitted an uncontested affidavit averring that he has limited

financial resources and that litigating this case in Washington, D.C., would be a "severe financial hardship." Aff. of J. Hall ¶ 4, Resp. Opp'n Mot. to Transfer Ex. 1, ECF No. 33-1. Based on Hall's averments and the foregoing authorities, the court holds that § 411(a)(4) of the LMRDA "makes Congress the exclusive source of limitations on a members' right to sue." *Serpico*, 1995 WL 479569, at *3. Because §§ 411(a)(4) and (b) render the forum-selection clause in the International's constitution unenforceable insofar as it deprives Hall of his statutory right to venue in this court, the International's motion to transfer is denied.

### III. Motion to Dismiss Standard and Facts Considered

#### A. *Rule 12(b)(6) Standard*

Defendants' Federal Rule of Civil Procedure 12(b)(6) motions "test[ ] the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). A complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, the short and plain statement must overcome two hurdles. First, the complaint's factual allegations must be sufficient to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint must contain sufficient allegations based on more than speculation to state a claim for relief that is plausible on its face. *Id.* For purposes of resolving a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded facts as true and draws all reasonable inferences from those facts in the plaintiff's favor. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023) (citing *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 308 (7th Cir. 2021)).

#### B. *Facts and Exhibits Considered*

Hall objects that many of defendants' arguments are based on facts not alleged in his complaint and exhibits attached to defendants' motions to dismiss. *See* Resp. Opp'n Mots. to Dismiss 4, 5–6, 11–13, 14, ECF No. 34. Because a Rule 12(b)(6) motion tests the complaint's sufficiency, the court's resolution of such a motion "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to

12

in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing Fed. R. Civ. P. 10(c) and *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986); other citations omitted). Under this standard, the court must disregard facts asserted by defendants in their Rule 12(b)(6) briefing that contradict the complaint's well-pleaded allegations and any exhibits properly before the court. *See Geinosky*, 675 F.3d at 745 n.1; *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (stating that formally striking a defendant's briefing is unnecessary); *Plumbers' Pension Fund, Local 130 v. Republic Piping Sys., Inc.*, 2020 WL 4437846, at *2 (N.D. Ill. Aug. 3, 2020) (Gottschall, J.); *TCF Mortg. Corp. v. Gelber Holding Co.*, 1991 WL 127587, at *1 (N.D. Ill. July 3, 1991). Accordingly, the court "disregards the factual assertions in [defendants'] briefing that either conflict with or go beyond the complaint." *Republic Piping,* 2020 WL 4437846, at *2.

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Neither side asks the court to convert defendants' Rule 12(b)(6) motions to summary judgment motions. Defendants nevertheless ask the court to consider several exhibits on the theory that they are referenced in the complaint and central to its allegations. *See* Local 63 Defs.' Mem. Supp. Mot. to Dismiss 3, ECF No. 23; International's Mot. to Dismiss 3, ECF No. 25. When the plaintiff does not attach a document to the complaint, it can still be considered if the complaint refers to it, it is "central to the plaintiff['s] claim," and it is "concededly authentic." *Santana v. Cook Cnty. Bd. of Rev.*, 679 F.3d 614, 619 (7th Cir. 2012) (quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009)); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Defendants' exhibits consist of (i) the constitutions of the International and IW Local 63 (ECF Nos. 23-1, 23-4, 25-2) and (ii) Wende's letters to IW Local 63 membership dated July 20 and November 6, 2020 (ECF Nos. 23-2, 23-3, 25-3).

Hall argues that the union constitutions are not central to his LMRDA claims. *See* Resp. Opp'n Mots. to Dismiss 5–7. The court cannot agree. The exception allowing consideration of

documents central to a plaintiff's complaint "is a narrow exception aimed at cases interpreting, for example, a contract." *Levenstein*, 164 F.3d at 347. International and local union constitutions create contractual rights. *See generally Korzen v. Loc. Union 705, Int'l Broth. of Teamsters*, 75 F.3d 285, 288 (7th Cir. 1996). Hall alleges that several of the acts which violated his LMRDA rights, including his suspension and removal without filing charges or holding a hearing, also violated the union's constitution and bylaws. *See* Compl. ¶¶ 48, 50, 56, 58–59. These allegations put the applicable constitutions and bylaws sufficiently at issue to trigger the exception for documents referenced in and central to the complaint. *See Wood v. Dennis*, 489 F.2d 849, 856 (7th Cir. 1973) (considering union constitution when reviewing a decision on a Rule 12(b)(6) motion); *see also, e.g.*, *Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714, 718 n.4 (7th Cir. 2003) (considering contract referenced in the complaint); *Venture Assocs.*, 987 F.2d at 431–32 (same).

The complaint references Wende's letters dated July 20 and November 6, 2020, by way of background and specifically alleges that both letters made false and defamatory accusations against Hall in retaliation for his exercising his LMRDA rights. Compl. ¶¶ 58–59. In their motions to dismiss, defendants quote from Wende's letters dated July 20 and November 6, 2020. *See* Local 63 Defs.' Mem. Supp. Mot. to Dismiss 6 & n.3; International's Mot. to Dismiss 11. Defendants argue in effect that the court should accept the letters' factual claims about Hall's alleged misconduct, Wende's motivations for the disciplinary action he took against Hall, and Wende's contested claims about who was responsible for the July 2020 union hall brawl. Based on these letters, defendants ask the court to conclude that Hall "was terminated as a result of non-speech conduct, [because] not one item of his advocacy was cited as motivation for his termination." Local 63 Defs.' Mem. Supp. Mot. to Dismiss 6–7; *see also* International's Mot. to Dismiss 11. Defendants' request to credit the letters' allegations must be denied because the complaint alleges that the letters contain false and defamatory allegations against Hall and that the union hall brawl was orchestrated by IW Local 63 leadership to create a pretext to discipline Hall. *See* Compl. ¶¶ 56–60. The complaint's factual allegations prevail over the letters' contrary

14

statements at the Rule 12(b)(6) stage. Were the court to consider these letters and credit Wende's version of the facts, the incorporation doctrine "would become a backdoor to a one-sided summary judgment procedure—the very thing Rule 12(d) seeks to prevent." *Ware v. Lake Cnty. Sheriff's Office*, 2017 WL 914755, at *3 (N.D. Ill. Mar. 8, 2017) (citing *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 773 (N.D. Ill. 2011)). The letters attached to defendants' motions to dismiss will not be considered.

## IV. Analysis of Motions to Dismiss

"Congress passed the LMRDA out of 'concern with widespread abuses of power by union leadership,'" and the LMRDA's provisions have the "overarching objective of "ensuring that unions w[ill] be democratically governed and responsive to the will of their memberships.'" *Vought v. Wis. Teamsters Joint Council No. 39*, 558 F.3d 617, 621 (7th Cir. 2009) (alteration in original) (quoting *Finnegan*, *supra*, 456 U.S. at 435). Defendants make several arguments for dismissing Hall's LMRDA claims, but the court reaches only their argument that Hall did not exhaust internal union dispute resolution procedures before filing suit. *See* Local 63 Defs.' Mem. Supp. Mot. to Dismiss 3–10; International's Mot. to Dismiss 3–11.

### A. Internal Remedies Not Exhausted

Title I of the LMRDA provides that a union "member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof." 29 U.S.C. § 411(a)(4). This provision "normally" requires a plaintiff to exhaust internal remedies before filing suit. *Vought*, 558 F.3d at 620 (citing *Stevens v. Nw. Ind. Dist. Council,* 20 F.3d 720, 733 (7th Cir. 1994)); *see Clayton v. Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of Am.*, 451 U.S. 679, 689 (1981); *Wood*, 489 F.2d at 856. In his complaint, Hall pleads in conclusory fashion that he "exercised all internal remedies available to him to resolve his claims asserted herein." Compl. ¶ 63. By themselves, "merely conclusionary" allegations of this sort in a complaint do not suffice to plead exhaustion.

15

*Wood*, 489 F.2d at 856; *see also Iqbal, supra*, 556 U.S. at 678–79.  But Hall also pleads that he unsuccessfully appealed to the International's executive board.  Compl. ¶ 63(c).

Defendants maintain that Hall had additional remedies.  They point to Article XIII § 6 of the International's constitution:

> The General Executive Council shall decide all appeals coming before it from the General Executive Board and decide all other matters properly coming before it.  It shall maintain a record of all cases and make a report to the regular Convention, and all decisions of the General Executive Council shall be final unless reversed by the regular Convention.

2016 Int'l Const. art. XIII, § 6, International's Mot. to Dismiss Ex. B at 45–46, ECF No. 25-2.

According to defendants, Hall should have appealed, but did not, the general executive board's decision to the general executive council and, if dissatisfied with the result, taken his grievances to the regular convention.  *See* International's Mot. to Dismiss 5–6; Local 63 Defs.' Mem. Supp. Mot. to Dismiss 4.  Hall does not dispute that he did not take these steps.

To show that he should not be required to take further steps, Hall cites a 90-year-old case stating that the language of Article XIII § 6 "confers no right of appeal upon anybody.  It gives the council 'power to hear appeals from the General Executive Board' and to decide other matters properly coming before it."  *Walsche v. Sherlock*, 159 A. 661, 665 (N.J. Ch. 1932) (quoting prior version of the constitution at issue here).  The *Walsche* court made this point to emphasize that the phrase "other matters" was not defined in Article XIII, which is not the issue here, where defendants contend that Hall should appeal to the council.  *See id*.  Moreover, *Walsche*'s construction of Article XIII supports the conclusion that the Council has the power to hear and decide an appeal from Hall without a time limit.  *See id*.  In other words, the remedies provided by Article XIII § 6 remain available to Hall today, as far as the record shows.

Hall also argues that he should not be required to follow the procedure in Article XIII § 6 because it merely makes an appeal available; he implicitly argues that he is not obligated to appeal.  *See* Resp. Opp'n Mot. to Dismiss 5–8.  Contrary to Hall's argument, the Seventh Circuit has required exhaustion under a union constitution that "provide[d] for" an appeal without explicitly requiring one.  *See Harris v. Plasterers & Cement Masons Loc. No. 406*, 619 F.2d

1164, 1167 (7th Cir. 1980); *see also Harris v. Int'l Longshoremen's Ass'n, Loc. No. 1291*, 321 F.2d 801, 804 (3d Cir. 1963).

Using language similar to § 101(a)(4) of the LMRDA, a separate provision of the International's constitution requires Hall to exhaust "all rights, remedies and reasonable provisions for hearing, trial, and appeal within [the International]" before filing suit.[3]  *See* 2016 Int'l Const., art. XIX, § 4, International's Mot. to Dismiss Ex. B at 57–58.  This language by its terms requires exhaustion of not only "rights" to appeal but also "provisions for hearing, trial, and appeal."  *Id.*  Thus, members must resort to the remedies in Article XIII § 6 before filing suit, even though that section does not explicitly require an appeal.  Because Hall did not comply with this requirement, he has not exhausted his internal union remedies.

### B. Excusing Failure to Exhaust

When analyzing whether to excuse the failure to exhaust internal union remedies, the court considers the following factors:

> First, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Stevens*, 20 F.3d at 731 (alteration omitted) (quoting *Clayton*, 451 U.S. at 689) (non-exhaustive list of factors).

Hall contends that the appeals process in Article XIII, even if available on paper, must be "reasonable . . ., which has more to do with their execution then how they read on paper."  Resp.

---

3    This provision reads in full:

> No suit or other action at law or equity shall be brought in any court and no proceeding shall be initiated before any administrative agency by any officer or member of The International Association or any Local Unions affiliated with The International Association until and unless all rights, remedies and reasonable provisions for hearing, trial, and appeal within The International Association shall have been properly followed and exhausted by the officer, member or Local Union. This provision shall require that they resort to internal remedies for a period not exceeding four (4) months.  The provisions of this Section shall be enforced to the extent permitted by law.

Int'l 2016 Const., art. XIX, § 4, International's Mot. to Dismiss Ex. B at 57–58.

17

Opp'n Mots. to Dismiss 7. Hall does not explain what specifically about the appeals process, as practiced, is unreasonable. *See id.* He points to the complaint's allegations that he was banned from IW Local 63 property and removed from office in violation of IW Local 63's constitution and bylaws, which require formal charges to be filed against him. *See id.* (citing Compl. ¶¶ 56, 58, 59). From these allegations, Hall asserts that it is reasonable to infer that, despite his having filed an appeal, no meaningful appellate review is possible, most likely because there is no record of a trial to review (assuming that is how an appeal before the council and convention works). *See id.* Hall cites no authority in support of this argument. *See id.*

In order to excuse failure to exhaust internal remedies based on these grounds, Hall "must establish that 'union officials [were] so hostile to [him] that [he] could not hope to obtain a fair hearing on [his] claim.'" *Vought*, 558 F.3d at 620 (alterations in original) (quoting *Stevens*, 20 F.3d at 733); *see also Clayton*, 451 U.S. at 688–89. In *Harris v. Plasterers & Cement Masons Local No. 406*, the Seventh Circuit rejected the plaintiffs' arguments that their failure to exhaust internal union appellate procedures should be excused because the formal charges against them did not comply with union bylaws and constitutional requirements. *See Harris v. Plasterers & Cement Masons Local No. 406*, 619 F.2d 1164, 1168–69 (7th Cir. 1980). "A challenge to a local union's disciplinary procedures," held the court, "should properly be made in the first instance within the union since there is [a] possibility that corrective action may render the particular issues moot, thus conserving judicial resources." *Id.* (citing *Buzzard v. Loc. Lodge 1040*, 480 F.2d 35 (9th Cir. 1973) and *McKeon v. Highway Truck Drivers & Helpers Loc. 107 of Int'l Broth. of Teamsters*, 223 F. Supp. 341 (Del. 1963)). Hall suggests no reason why he could not argue before the council that the relevant union constitutions and bylaws were violated because charges were not brought against him and a trial was not held. *See* Resp. Opp'n Mots. to Dismiss 7–8. Thus, as in *Harris v. Plasterers & Cement Masons Local No. 406*, there is no reason to think the internal union process is unavailable or inadequate to hear and resolve Hall's procedural arguments and take corrective action if such action is warranted. *See Harris*, 619 F.2d at 1168–69. Nor does Hall allege in his complaint or briefing that anyone associated

with the International's executive committee, which would hear his appeal, was involved in the July 2020 decision to ban him from the union hall and remove him from office. *See* Compl. ¶¶ 56–59; cf. *Howard v. Loc. 152 of Int'l Constr. & Gen. Laborers' Union of Am.*, 999 F. Supp. 1213, 1216 (N.D. Ill. 1998). For these reasons, neither the complaint nor the representations in Hall's briefing plausibly allege grounds to excuse Hall's failure to exhaust his internal remedies under Article XIII of the International's constitution. *See Vought*, 558 F.3d at 620; *Stevens*, 20 F.3d at 733.

### C. Remedy

The Seventh Circuit prescribed the remedy for failure to exhaust in *Stevens*: "Normally, failure to properly exhaust should lead a federal court to stay its hand until exhaustion can be completed (or the dispute resolved in the process)." *Stevens*, 20 F.3d at 733. But dismissal is proper where "exhaustion can never be completed because of the nature of the default." *Id.* In *Stevens*, the plaintiff missed a 30-day deadline to appeal in the union's constitution, making exhaustion impossible and therefore requiring dismissal. *See id.* The parties here have not briefed the proper remedy. The court has located nothing in the union's constitution imposing a deadline for appealing to the council or the convention under Article XIII § 6. This case will therefore be stayed for a period not to exceed four months to allow Hall to exhaust his internal remedies.[4]

### V. Conclusion

For the reasons stated, the International's motion to transfer venue is denied, and defendants' motions to dismiss are granted in part and denied in part without prejudice. In accordance with 29 U.S.C. § 411(a)(4), this case is stayed for a period not to exceed four months

---

4    If defendants believe that dismissal is the appropriate remedy based on the language of the International's constitution, they may file an appropriate motion citing the specific provision they believe entitles them to relief.

to permit plaintiff to exhaust his internal union remedies.  Defendants' motions to dismiss the complaint are denied without prejudice to refiling if and when the stay is lifted.

Dated:  September 27, 2023                 /s/  Joan B. Gottschall           
                                                 United States District Judge